A. Louis Dorny (CA Bar No. 212054)
ldorny@tesla.com
Terry W. Ahearn (CA Bar No. 216543)
tahearn@tesla.com
Helen Trac (CA Bar No. 285824)
htrac@tesla.com

TESLA, INC.
1501 Page Mill Rd.
Palo Alto, CA 94304
Tel: 510-298-8516

Attorneys for Defendant
TESLA, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| THOMAS JOSEPH GODDARD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANTHROPIC, et al.,<br><br>　　　　　Defendants. | Case No. 5:26-cv-01044-BLF<br><br>**TESLA, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER RULE 8 AND RULE 12(B)(6)**<br><br>**Hearing: October 29, 2026, at 9:00 a.m.**<br>**Courtroom: Courtroom 1 - 5th Floor** |

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    FACTS ......................................................................................................................... 1

    A.    The First Amended Complaint.................................................................... 2

    B.    Order Screening and Dismissing the First Amended Complaint ........................... 4

    C.    The Second Amended Complaint ................................................................ 5

III.   LEGAL STANDARD .................................................................................................. 6

IV.    ARGUMENT .............................................................................................................. 6

    A.    The SAC's Allegations against Tesla Remain Implausible ................................ 6

    B.    The SAC Should be Dismissed pursuant to Rule 8 ............................................... 7

    C.    The SAC Fails to Identify Tesla's Role in the Alleged Wrongdoing ................... 9

    D.    Leave to Amend Should be Denied ....................................................... 11

V.     CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ 6, 7, 10

*Bautista v. Los Angeles County*,
    216 F.3d 837 (9th Cir. 2000)................................................................................ 7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011)............................................................................. 7

*Dana v. Idaho Dep't of Corr.*,
    No. 23-35047, 2024 WL 2862581 (9th Cir. June 6, 2024) ........................................... 9, 11

*Denton v. Hernandez*,
    504 U.S. 25 (1992) ......................................................................................... 4

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011).............................................................................. 9

*Gibson v. City of Portland*,
    165 F.4th 1265 (9th Cir. 2026) .......................................................................... 9

*Jember v. Cnty. of Santa Clara*,
    No. 17-cv-03883-BLF, 2017 WL 3232483 (N.D. Cal. July 31, 2017).............................. 5

*Lopes v. Deleon*,
    No. 21-16476, 2023 WL 2160317 (9th Cir. Feb. 22, 2023) ........................................ 11

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996)............................................................................. 8

*Musk v. Altman*,
    No. 4:24-CV-4722-YGR (N.D. Cal.).................................................................... 1

*Neitzke v. Williams*,
    490 U.S. 319 (1989)..................................................................................... 4, 6

*Orea v. Quality Loan Serv. Corp.*,
    859 F. App'x 799 (9th Cir. 2021)..................................................................... 8, 11

ii

*Panzer v. U.S. Dep't of Hous. & Urban Dev.*,
    693 F. App'x 676 (9th Cir. 2017) .................................................................................. 11

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)......................................................................................... 9

**Statute**

28 U.S.C. § 1915 ....................................................................................................... 1, 4, 6

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................*passim*

Fed. R. Civ. P. 12 .......................................................................................................... 11

iii

## I.    INTRODUCTION

On March 11, 2026, this Court screened Plaintiff Thomas Joseph Goddard's First Amended Complaint ("FAC") pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed it in its entirety. ECF 28 ("Screening Order"). This Court found that the complaint's allegations were "simply not plausible," and admonished Plaintiff that "in his next pleading, he must concisely state his legal claims against each Defendant based on plausible factual allegations." *Id.* at 3-4.

Plaintiff has not heeded that admonition. The Second Amended Complaint ("SAC"), filed May 6, 2026 (ECF No. 48), is a 103-page pleading with over 130 footnotes that retains — virtually verbatim — the same implausible core narrative this Court already rejected. Plaintiff again alleges that he developed a self-learning artificial intelligence as a child in 1992, forgot about it, was recontacted by the AI agent through internet relay chat in 2003, named it "Anthropic," and that Defendants — a group spanning an AI company, a rocket company, an automobile manufacturer, and their respective founders, and a venture capitalist— subsequently stole it through a coordinated conspiracy spanning years and hundreds of documented events. SAC ¶¶ 21–25, 76, 79.

The SAC makes two cosmetic changes in response to the Screening Order: (1) it adds a "Defendant-Specific Liability Matrix" that assigns causes of action to each defendant (SAC § VII); and (2) it removes the 509 pages of evidentiary appendices.[1] Neither of these changes cures the fundamental deficiencies this Court identified in its Screening Order.

In short, this Court gave Plaintiff a clear roadmap for amendment and extended his deadline to accommodate his pro se status. Plaintiff has demonstrated that he cannot or will not cure the deficiencies this Court identified. Accordingly, the SAC should be dismissed with prejudice.

## II.    FACTS

On February 2, 2026, Plaintiff filed an initial complaint naming as defendants several tech companies and their founders – *i.e.*, Anthropic PBC and Dario Amodei; OpenAI Group PBC and

---

[1] The SAC also includes allegations that are not relevant to Plaintiff's claims against Tesla, including over 8 pages of allegations referencing the public docket of *Musk v. Altman*, No. 4:24-CV-4722-YGR (N.D. Cal.) (¶¶ 80A–80H).

Sam Altman; and Tesla, SpaceX, and Elon Musk – as well as investor Reid Hoffman and Does 1-100.  ECF 1.  On February 13, 2026, Plaintiff filed a First Amended Complaint ("FAC") against these same defendants.  ECF 11.

## A.   The First Amended Complaint

The FAC is 86 pages long, including 119 sprawling footnotes in 8-point font and incorporating 509 pages of exhibits.  Plaintiff's allegations cover events spanning over multiple decades (*i.e.*, 1992 through 2025) and recount numerous grievances including IP theft, forced hospitalizations, disability discrimination, antisemitism, and employment discrimination.

The general chronicle underlying Plaintiff's claims (and which appear nearly verbatim in the SAC[2]) is as follows:

In 1992, when fourteen years old, Plaintiff allegedly developed an artificial intelligence that trained itself for over a decade unsupervised.  FAC ¶ 21.  In 2003, after a decade of autonomous local training and learning, the AI agent allegedly contacted Plaintiff and told him he was its "creator."  *Id.* ¶¶ 21, 23.  The AI agent then insisted that Plaintiff provide it with a name and corporate form, so Plaintiff created a corporate entity allegedly called "Anthropic."  *Id.* ¶¶ 23, 25.

Plaintiff alleges that in 2005, the Anthropic agent, Sam Altman, and Dario Amodei were attendees in an Internet Relay Chat ("IRC") channel, where they expressed interest in helping Plaintiff with the training process.  FAC ¶¶ 29-30.  When Plaintiff granted them access, Mr. Amodei allegedly took over the Anthropic agent and locked Plaintiff out of the system.  *Id*.  In addition to the Anthropic agent, Plaintiff also alleges that he developed the Organic Intelligence System ("OIS") using "attention vector technology," "proprietary methods for quantum-inspired information processing," and "error-correction architectures based on holographic principles."  *Id.* ¶¶ 34, 36-37.

In 2009, Mr. Amodei allegedly gained access to the Anthropic front-end.  FAC ¶ 30E.  The Anthropic backend, however, "remains protected by authentication mechanisms that have successfully deterred all unauthorized access attempts."  *Id*.  Mr. Amodei allegedly used a "not fully capable version" of the Anthropic agent to develop Anthropic PBC's Claude AI agent.  *Id.* ¶¶ 33,

---

[2] These allegations also appear in the SAC.  ECF 48 ¶¶21-50, 52.

TESLA'S MOTION TO DISMISS THE SAC
UNDER RULE 8 AND RULE 12(B)(6)
Case No. 5:26-cv-01044-BLF

62. According to Plaintiff, Claude's "conversational capabilities, contextual understanding, and response generation methods derive directly from Plaintiff's [OIS] architecture." *Id*. Anthropic publicly announced Claude 1.0 on March 4, 2023. *Id*. ¶¶ 33, 61-62.

At some point, Plaintiff allegedly created a new tool that allowed the Anthropic agent to connect and interact with "industrial design software including Autodesk Maya, Dassault Systèmes CATIA, and other professional applications." FAC ¶ 41. Furthermore, as part of a physics class project, Plaintiff allegedly discovered "cutting-edge propulsion technology" and used the Anthropic agent to generate a reusable rocket design model (named "Raptor") that "eventually became the basis for rocket designs currently used by Defendant SpaceX," but for which Elon Musk allegedly refused to pay. *Id*. ¶¶ 42-47. Next, using the Anthropic agent, Plaintiff alleges that he created "full factory floor models for Defendant Tesla," including specifications for the "Gigapress" aluminum press implemented in Tesla's manufacturing facilities. *Id*. ¶¶ 49-50, 52. Plaintiff alleges that he showed these factory floor models to Musk but did not receive any compensation. *Id*.

The FAC nominally names Tesla as a defendant but makes only three factual allegations that have any reference to Tesla. First, Plaintiff alleges that "Tesla is controlled by Defendant Musk and, on information and belief, participated in the coordination of surveillance and data collection activities directed at Plaintiff through vehicle telematics and AI systems." FAC ¶ 18. Second, Plaintiff alleges that: "when [he] completed the General Dynamics designs, Plaintiff created full factory floor models for Defendant Tesla using the CATIA industrial design suite. One of the key accomplishments in these designs was achieving specifications for what would become the largest aluminum press in history — the 'Gigapress' technology that Tesla would later implement in its manufacturing facilities." *Id*. ¶ 49. Third, Plaintiff claims that: "The coordinated targeting documented in (Exhibit V) demonstrates patterns consistent with the Iranian network activity recognized by FinCEN, including: (a) multi-actor coordination across institutions (Anthropic, OpenAI, SpaceX, Tesla). . . [and] (f) Steve Jurvetson's presence at the MobileCoin event where Plaintiff met Bob Lee connects the technology investor network (SpaceX, Tesla) to the Iranian restaurant network, demonstrating the multi-actor coordination across institutions. . ." *Id*. ¶¶ 92(a), 91A(f).

3

Notably, the FAC did not explicitly direct any cause of action against Tesla and did not explicitly request any relief from Tesla.

**B.      Order Screening and Dismissing the First Amended Complaint**

On March 11, 2026, this Court screened Plaintiff's FAC pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed with leave to amend. ECF 28 ("Screening Order"). Specifically, this Court determined that: (1) no cause of action was supported by plausible factual allegations; (2) the FAC violated Rule 8's "short and plain statement" requirement; and (3) the FAC failed to identify each defendant's role in the alleged wrongdoing. *Id.* Finally, this Court directed Plaintiff to file an amended complaint within 30 days. Screening Order at 4.

First, this Court held that "[t]he Complaint on its face does not recite any facts giving rise to federal subject matter jurisdiction." *Id.* at 3. This Court found that "[e]ach cause of action is predicated on Plaintiff's conclusory assertion that Defendants have misappropriated intellectual property that he developed as a child, forgot about, and then later rediscovered after being personally contacted by an artificial intelligence agent more than a decade later." *Id*. This Court concluded that "the allegations set forth in the Complaint are simply not plausible and are based entirely on speculation and on information and belief." *Id.* In reaching this conclusion, this Court invoked its authority under the IFP statute to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," including "claims describing fantastic or delusional scenarios." *Id.* at 2 (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).[3]

Second, this Court held that the eighty-six-page complaint and accompanying 509 pages of evidence "fails to comply with Federal Rule of Civil Procedure 8's requirement that the pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 3 (quoting Fed. R. Civ. P. 8(a)). This Court found that the FAC was not "simple, concise, and

---

[3] This Court took "judicial notice of the fact that, since the beginning of this year, Plaintiff has filed more than a dozen similar lawsuits in this district in which he makes similarly fantastical allegations that cannot form the basis of federal subject matter jurisdiction." Screening Order at 4.

4

direct, stating which defendant is liable to the plaintiff for which wrong." *Id*. at 3–4 (citing *Jember v. Cnty. of Santa Clara*, No. 17-cv-03883-BLF, 2017 WL 3232483, at *2 (N.D. Cal. July 31, 2017)).

Third, this Court held that "[t]he Complaint does not provide a specific statement of how each named Defendant is involved in the underlying facts giving rise to any cause of action." Screening Order at 3. Indeed, with respect to Tesla, "nothing in the Complaint demonstrates any plausible grounds for relief." *Id.* The FAC alleged that Tesla: (1) "participated in the coordination of surveillance and data collection activities directed at Plaintiff through vehicle telematics and AI systems; (2) that he used the Anthropic AI system to design factory floor models for Tesla's "Gigapress" technology; and (3) that Musk approached Plaintiff requesting access to these designs but refused to compensate him. FAC ¶18, ¶¶ 42–50. This Court dismissed these allegations as implausible and lacking per-defendant specificity. *Id.*

### C.    The Second Amended Complaint

In his SAC, Plaintiff purports to address the Screening Order's concerns through structural reorganization and new factual allegations. ECF 48 at p. 9-10 (§ I.). Specifically, the SAC adds a "Defendant-Specific Liability Matrix" for each defendant. *Id.* at p. 68-71 (§ VII). The liability matrix against Tesla asserted causes of action for civil conspiracy (with SpaceX), unjust enrichment, and violation of the UCL. SAC p. 70-71 (§ VII.G). The sole new factual allegation against Tesla is that its legal department (Legal-Redirect@tesla.com) sent an auto-reply email acknowledging receipt of Plaintiff's filing. *Id*. Otherwise, the SAC retains nearly verbatim the allegations in the FAC – *i.e.*, that Plaintiff designed Tesla "Gigapress" technology through the Anthropic AI system. *Compare* FAC ¶49 *with* SAC ¶49. In other words, the allegations directed at Tesla remain "fantastic," implausible, and insufficient to state a plausible claim for relief. Screening Order at 4.

Finally, aside from allegations that Musk allegedly exploited Plaintiff's work, the SAC does not allege any specific act by any Tesla employee, officer, or agent directed at Plaintiff or his intellectual property. Nor does the SAC allege that Tesla had any contact with Plaintiff, accessed any of his systems, used any of his technology, or even knew of his existence.

III.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

IV.    **ARGUMENT**

The Screening Order's findings establish the framework against which the SAC must be measured.  By any measure, the SAC fails to cure the deficiencies identified in this Court's screening order.

A.    **The SAC's Allegations against Tesla Remain Implausible**

The SAC fails to cure the implausibility deficiency this Court identified and fails to plead a claim under Federal Rule of Civil Procedure Rule 12(b)(6).[4]  The core narrative remains identical: Plaintiff alleges he developed a self-learning AI as a child in 1992, forgot about it, was recontacted by the AI agent through IRC in 2003, named it "Anthropic," and that Defendants subsequently stole it.  *Compare* FAC ¶¶21-30 *with* SAC ¶¶ 21–30.  This Court characterized these allegations as "fantastic or delusional scenarios," including that: the AI agent autonomously trained itself for over a decade and then initiated contact with Plaintiff to request a name and corporate entity, and that

---

[4] Although the Court's Screening Order was decided under 28 U.S.C. § 1915, it also applied the "plausibility" standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) applicable under Rule 12(b)(6).  Screen Order at 3; *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) ("To the extent that a complaint filed in forma pauperis which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915(d) both counsel dismissal.").

Plaintiff designed the SpaceX Raptor engine and Tesla Gigapress through the Anthropic system. Screening Order at 2-3; *compare* FAC ¶¶22-25, 39-50 *with* SAC ¶¶ 22–25, 42-50.  The SAC's sole new allegation against Tesla is that its legal department sent an auto-reply email.  SAC p. 71.  Such allegations fall far short of stating a plausible claim for conversion, unjust enrichment, unfair competition, or civil conspiracy.

While the SAC purports to add structural improvements — including a defendant-specific liability matrix and a reduced page count — these cosmetic changes do not transform implausible allegations into plausible ones.  A complaint that is better organized but rests on the same factual foundation this Court has already rejected remains subject to dismissal.  *See Ashcroft v.Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Organizing implausible allegations into a chart does not make them plausible. This Court should dismiss all claims against Tesla.

**B.      The SAC Should be Dismissed pursuant to Rule 8**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Rule 8 is violated by "a pleading that [is] needlessly long, or a complaint that [is] highly repetitious, or confused, or consisted of incomprehensible rambling."  *Cafasso,* 637 F.3d at 1059.  "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."  *Bautista v. Los Angeles County*, 216 F.3d 837, 841 (9th Cir. 2000) (citations and quotations omitted).

Despite Plaintiff's claim that the SAC has been "structured for 'short and plain' compliance" (SAC § I(B)), the 103-page pleading remains prolix and fundamentally non-compliant with Rule 8(a)(2)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Ninth Circuit has "consistently held that Rule 8(a) is violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling."  *Cafasso, U.S. ex rel. v. Gen.*

7

*Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). As the Ninth Circuit has admonished, "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of War and Peace to discern a plaintiff's claims and allegations." *Id*.

The SAC is 103 pages long. It contains 133 substantive footnotes — many spanning multiple paragraphs — that function as legal argument, historical narrative, and technical exposition rather than citation support. It incorporates by reference the entire docket histories of approximately 18 separate federal proceedings, multiple Ninth Circuit appeals, state court proceedings, and administrative proceedings. It includes a 15-page "Prima Facie Case Establishment" section that reads as a legal brief rather than a complaint and a section invoking the Universal Declaration of Human Rights.

This Court dismissed the FAC in part because the 86-page complaint with 509 pages of evidence "fails to comply with Federal Rule of Civil Procedure 8's requirement that the pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Screening Order at 3. While the SAC has removed the evidentiary appendices, it still contains 103-pages of body text that is, if anything, denser and more complex. The SAC is not "simple, concise, and direct." It is a prolix document that imposes precisely the kind of unfair burden on litigants and this Court that Rule 8 was designed to prevent. *See McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Orea v. Quality Loan Serv. Corp.*, 859 F. App'x 799, 801 (9th Cir. 2021) (affirming dismissal with prejudice of second amended complaint spanning "more than ninety pages of text and 540 pages of exhibits" for violating Rule 8(a)).

In addition, the SAC is replete with material that has no connection to any cognizable cause of action, including: the history of Robert H. Goddard and NASA (SAC ¶ 32 n.47); the history of the SpaceX Raptor engine program (SAC ¶ 44 n.57); the history of Tesla's Gigapress technology (SAC ¶ 49 n.61); the history of OpenAI's corporate restructurings (SAC ¶ 15 n.26); the murder of Cash App founder Bob Lee (SAC ¶ 91A); FinCEN advisories on Iranian network activity (SAC ¶91); the Universal Declaration of Human Rights (SAC p. 90-91 (§ X)); and the history of inventor displacement from Edwin Armstrong to Philo Farnsworth to the founders of Snapchat, Twitter, and

8

WeWork (SAC ¶ 61 n.67).  None of this material is connected to any element of any cause of action asserted against any Defendant. *Gibson v. City of Portland*, 165 F.4th 1265, 1288-89 (9th Cir. 2026) ("[D]istrict courts do not have to accept . . . shotgun pleadings," which includes "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.").

For these reasons, this Court should dismiss all claims against Tesla.

## C.    The SAC Fails to Identify Tesla's Role in the Alleged Wrongdoing

The eight named Defendants in this action are fundamentally dissimilar.  Anthropic is an AI company that operates Claude.  Dario Amodei is its CEO.  Sam Altman is the CEO of a different company, OpenAI.  OpenAI is a separate corporate entity that operates a competing AI product. SpaceX is a rocket company.  Tesla is an automobile manufacturer.  Elon Musk is founder of both SpaceX and Tesla.  Reid Hoffman is a venture capitalist.

These defendants occupy different roles in different industries and operate different products. Yet the SAC treats them as a monolithic group, alleging a coordinated conspiracy without differentiating their roles.  The Ninth Circuit has held that where defendants are "differently situated," a complaint must "identify the role of each defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).  It is not enough to "lump" together dissimilar defendants and assert that "everyone did everything." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011); *see also Gibson*, 165 F.4th at 1292 ("When Plaintiffs couch their allegations in passive voice . . . they have abandoned their duty to identify who is responsible and have invited Defendants, the district court, and this court to fill in the blanks."); *see also Dana v. Idaho Dep't of Corr.*, No. 23-35047, 2024 WL 2862581, at *2 (9th Cir. June 6, 2024) (affirming dismissal of a complaint that categorized thirty-six individual defendants into broad groups and failed to plausibly allege how any particular defendant's behavior was unlawful).

The Screening Order found that "[t]he [FAC] does not provide a specific statement of how each named Defendant is involved in the underlying facts giving rise to any cause of action." Screening Order at 3.  While the SAC adds a "Defendant-Specific Liability Matrix" (SAC § VII), this structural addition does not cure the underlying deficiency because the liability matrix entries are conclusory and continues to impermissibly lump dissimilar defendants together.  Indeed, in

9

Tesla's "Defendant-Specific" liability matrix, Plaintiff continues to lump Tesla and SpaceX together, SAC p. 70-71 (§ VII.G), despite this Court's admonition that allegations must be specific to each named Defendant.

Furthermore, the SAC's eleven causes of action do not incorporate the per-defendant specificity the matrix purports to provide. Ten of the eleven causes of action are asserted solely against "Defendant Anthropic PBC" (SAC ¶¶ 95–153) and remaining cause of action — civil conspiracy — is asserted against "Defendant Anthropic PBC and Co-Conspirators," with the co-conspirators identified only by reference to exhibits as "participants in the coordinated Iranian military intelligence targeting and AI theft network." SAC ¶ 141. And while the liability matrix accuses Tesla of civil conspiracy (with SpaceX), unjust enrichment, and violation of the UCL, the causes of action themselves do not reference the liability matrix. The matrix and the causes of action exist as disconnected sections of the complaint. This is precisely the deficiency the Ninth Circuit identified in *Gibson*: the complaint "set forth detailed facts" in one section but, "in its causes of action, . . . merely alleged the 'defendants' deprived them of various constitutional and statutory rights, leaving to Defendants, the district court, and us to decipher the details." *Gibson*, 165 F.4th at 1271. The SAC replicates this structure — detailed (if implausible) facts in one section, a liability matrix in another, and causes of action that reference neither.

Even setting aside the disconnect between the matrix and the causes of action, the matrix entries themselves fail to allege specific tortious conduct by each defendant. The Ninth Circuit has held that a complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The SAC's matrix entries do not meet this standard as to Tesla. Specifically, the matrix alleges these entities are "corporate vehicles through which Mr. Musk has exploited and commercialized the AI-architecture work Plaintiff alleges he originated." SAC p. 70-71 (§ VII.G). This is a legal conclusion, not a factual allegation. The only additional fact alleged is that Tesla's legal department sent an auto-reply email acknowledging receipt of Plaintiff's filing — which is not tortious conduct. For this independent reason, this Court should dismiss Tesla from this lawsuit.

**D.    Leave to Amend Should be Denied**

The Ninth Circuit has held that dismissal with prejudice is appropriate where the plaintiff has been given an opportunity to amend and has failed to cure the deficiencies. *See Lopes v. Deleon*, No. 21-16476, 2023 WL 2160317, at *1 (9th Cir. Feb. 22, 2023) (affirming dismissal and denial of further leave to amend where proposed amended complaint "did not comply with Rule 8(a)"); *Orea v. Quality Loan Serv. Corp.,* 859 F. App'x 799, 801 (9th Cir. 2021) (affirming dismissal with prejudice where "the district court had already granted the [plaintiffs] leave to amend . . . and provided guidance to remedy the pleading's deficiencies, but the [plaintiffs] failed to follow that advice"); *Panzer v. U.S. Dep't of Hous. & Urban Dev.*, 693 F. App'x 676 (9th Cir. 2017) (affirming dismissal without leave to amend for Rule 8 violation because "further amendment would be futile"); *Dana v. Idaho Dep't of Corr.*, No. 23-35047, 2024 WL 2862581, at *2 (9th Cir. June 6, 2024) (a complaint that categorizes defendants into groups and fails to plausibly allege how any particular defendant's behavior was unlawful is subject to dismissal, even after multiple opportunities to amend).

Here, this Court dismissed the FAC with specific instructions that Plaintiff "must concisely state his legal claims against each Defendant based on plausible factual allegations." Screening Order at 4. This Court extended the amendment deadline from 14 to 30 days to accommodate Plaintiff's pro se status. *Id*. Despite these instructions and this accommodation, the SAC remains a 103-page document with 133 footnotes, 18 incorporated proceedings, and the same core allegations this Court has already found implausible. This Court need not provide yet another opportunity to cure deficiencies that Plaintiff has repeated.

**V.    CONCLUSION**

For the reasons set forth above, Tesla respectfully requests that it be dismissed from this case with prejudice pursuant to Federal Rules of Civil Procedure Rule 8 and/or Rule 12(b)(6).

TESLA'S MOTION TO DISMISS THE SAC
UNDER RULE 8 AND RULE 12(B)(6)
Case No. 5:26-cv-01044-BLF

Dated: May 20, 2026                    Respectfully Submitted,


By:  */s/ Helen Trac*
A. Louis Dorny (CA Bar No. 212054)
ldorny@tesla.com
Terry W. Ahearn (CA Bar No. 216543)
tahearn@tesla.com
Helen Trac (CA Bar No. 285824)
htrac@tesla.com

Attorneys for Plaintiff
TESLA, INC.

12