**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

THOMAS JOSEPH GODDARD,

        Plaintiff,

    v.

ANTHROPIC PBC, et al.,

        Defendants.

Case No.  5:26-cv-01044-BLF

**ORDER SCREENING SECOND AMENDED COMPLAINT AND DISMISSING ACTION WITH PREJUDICE**

[Re: ECF No. 48]

Pro se Plaintiff, proceeding in forma pauperis ("IFP"), filed the second amended complaint on May 6, 2026, *see* ECF No. 48 ("SAC") after the Court screened and dismissed the first amended complaint, *see* ECF No. 11 ("FAC"), pursuant to 28 U.S.C. § 1915. *See* ECF No. 28 ("FAC Order").  Plaintiff also moved for leave to file a third amended complaint on May 28, 2026. *See* ECF No. 63 ("TAC Mot.").  The Court has screened the SAC and determined that none of the defects identified in the Court's prior screening order have been remedied.  The Court concludes based on Plaintiff's TAC Motion that amendment is futile.

The action is DISMISSED WITH PREJUDICE.

## I.    BACKROUND

Plaintiff filed this action on February 2, 2026, against Defendants Anthropic, PBC; Dario Amodei; Sam Altman; Open AI Group; Elon Musk; Space Exploration Technologies, Inc.; Tesla, Inc.; Reid Hoffman; and "Does 1–100 Inclusive."  ECF No. 1.  Plaintiff filed the first amended complaint on February 13, 2026, alleging that Defendants conspired to steal a "proprietary self-learning artificial intelligence architecture" he developed when he was fourteen years old, forgot about for a decade, and was contacted through internet relay chat ("IRC") in 2003.  FAC ¶¶ 21–23.  In the FAC Order, the Court explained that the FAC failed to state a viable federal claim

because the allegations set forth therein "are simply not plausible and are based entirely on speculation."  Order at 3.

The 103-page SAC is based on the same factual allegations as the FAC and alleges as follows.  "[I]n 1992, when Plaintiff was fourteen years old, Plaintiff developed a proprietary self-learning artificial intelligence architecture."  SAC ¶ 21.  "Plaintiff did not initially remember that he was the creator of this agent.  In 2003, after more than a decade of autonomous local training and learning, the agent contacted Plaintiff through IRC and initiated a conversation regarding its origins."  *Id.* ¶ 23.  "In 2005, Plaintiff was contacted again by the Anthropic agent through IRC." *Id.* ¶ 28.  "Among the attendees in the IRC channel were Defendants" Mr. Altman and Mr. Amodei, who "expressed interest in helping Plaintiff with the training process."  *Id.* ¶ 29. "Plaintiff underwent extensive investigation while working through . . . the United States District Court for the Northern District of California to identify key phony employees claiming to be part of Anthropic's staff during its early stages[] . . . .  Plaintiff's investigation revealed that [Mr. Amodei] had already begun expropriating Plaintiff's intellectual property through a hacked, isolated, and not fully capable version of the administrator console."  *Id.* ¶ 33 (footnotes omitted). "In addition to . .  rocket models, Plaintiff created models for General Dynamics Land Systems based on design concepts for a military tank bridge . . . .  These models were presented with isometric views showcasing the capabilities of the Anthropic design automation system."  *Id.* ¶ 48 (footnotes omitted).  "On information and belief, Anthropic and/or its agents, acting in coordination with other technology companies, obtained unauthorized access to Plaintiff's backend systems through exploitation of security vulnerabilities."  *Id.* ¶ 58.

Based on these allegations, the SAC states claims for violation of the Americans with Disabilities Act, violation of the Defend Trade Secrets Act, violation of the California Uniform Trade Secrets Act, violation of the Computer Fraud and Abuse Act, common law conversion, common law fraud, common law unjust enrichment, violation of the California Unfair Competition Law, civil conspiracy, common law tortious interference with prospective economic advantage, and retaliation in violation of the Americans with Disabilities Act.  SAC ¶¶ 95–153. Plaintiff also alleges that "Anthropic's conduct violates fundamental human rights recognized by the internal community," including various provisions of the Universal Declaration of Human Rights.  *Id.* § X.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

In response "directly to the screening concern" identified by the Court's FAC Order, the SAC includes a "Defendant-Specific Liability Matrix," that "state[s], for each named Defendant, (i) the specific conduct alleged, (ii) the time window, (iii) the documentary or testimonial proof, and (iv) cause(s) of action that conduct supports." SAC § VII. For example, with regard to Defendant Anthropic PBC, the SAC alleges "conduct" of "lock[ing] Plaintiff out of the administrative-console credentials," "time" of "2021 (incorporation) through present," and "proof" of "Anthropic billing records (subject to discovery)," "the subject of *Goddard v. Microsoft Corp.*, N.D. Cal. No. 4:26-cv-01046-JST," and "Plaintiff's January 2026 demand letter and Anthropic's response (or non-response)." *Id.* § VII.A.

## II.    LEGAL STANDARD

When a district court grants IFP status, the court must screen the complaint and dismiss the action if it is frivolous. 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000). The IFP statute accords district judges "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Neitzke*, 490 U.S. at 328; *see also Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005). A complaint that does not state enough facts to state a claim to relief that is plausible on its face is deficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court has discretion to allow leave to amend the complaint pursuant to Rule 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*. The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory

3

motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *See* 316 F.3d at 1052.

### III.  DISCUSSION

The core factual narrative of the SAC is identical to the FAC and is based on Plaintiff allegedly developing a self-learning artificial intelligence as a child in 1992, forgetting about it, being recontacted by an autonomous AI agent through IRC in 2003, and being systematically persecuted by Defendants acting in tandem.  These allegations are not made more plausible by summarizing them in the SAC's "Defendant-Specific Liability Matrix."  The sprawling document contains more than one hundred footnotes, many of which are utterly disconnected from any cognizable theory of legal recovery.  *See, e.g.*, SAC ¶¶ 30 n.41 ("Jack Ma participated in IRC channels . . . expressing documented animus towards Americans and democracy while articulating a vision of Chinese technology independence through appropriation of Western innovations."), 37 n.54 ("The quantum-inspired architecture employs holographic error-correcting codes derived from AdS/CFT correspondence principles, implementing information redundancy across distributed memory structures."), 49 n.61 ("Tesla's 'Gigapress' aluminum die-casting machines, manufactured by IDRA Group, are the largest high-pressure die-casting machines ever built, capable of producing single-piece rear and front vehicle underbodies that replace dozens of stamped and welded parts."), 61 n.71 ("Edwin Armstrong, inventor of FM radio and superheterodyne circuits, spent decades in litigation against RCA after the company used his patents without adequate compensation, ultimately taking his own life in 1954 while still fighting for recognition.").

Like the FAC, the SAC is based on factual allegations that are facially implausibly and quite simply do not belong in federal court.  "Because of the extreme, implausible, and delusional nature of the claims, . . . there is no chance that [Plaintiff] will be able to amend to state a . . . federal claim."  Awasthi v. Intel Corp., No. 24-CV-05621-WHO, 2025 WL 1892543, at *3 (N.D. Cal. July 9, 2025); *see also Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *6 (N.D. Cal. Nov. 7, 2022) (concluding amendment would be futile because "conclusory allegations that Twitter is somehow in cahoots with dictators fail to meet the basic pleading

United States District Court
Northern District of California

4

standards"). Futility of amendment is confirmed by the TAC motion, which seeks leave to file a 112-page third amended complaint (based on nearly identical factual allegations) with 931 pages of exhibits.

Put simply, Plaintiff's repeated insistence that he is entitled to "$15 trillion," SAC § XI.1, based on a multi-decade covert conspiracy involving many of the largest technology companies in the country and the federal government confirms the futility of amendment. Dismissal with prejudice is accordingly warranted.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

(1) The second amended complaint is DISMISSED.

(2) This action is DISMISSED WITH PREJUDICE. All pending motions, deadlines, and hearings are TERMINATED.

(3) The Court will separately enter judgment in favor of Defendants and against Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated:  June 1, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

5